[Civ. No. 923. Fourth Appellate District.—October 10, 1932.]

EDWARD RAINEY, as Superintendent of Banks, etc., Appellant, v. R. A. JACKSON, Respondent.

Albert A. Rosenshine, Elbert W. Davis and J. H. Hoffman, for Appellant.

Fitzgerald & Selleck for Respondent.

JENNINGS, J.—Appellant is the Superintendent of Banks of the State of California, and as such took possession of the property and business of the California Savings and Commercial Bank of San Diego on July 24, 1930. Among the assets of the bank which came into appellant's possession was a promissory note dated May 19, 1930, payable August 18, 1930, in the principal sum of $25,000, signed by respondent. The evidence shows that no payments either on principal or interest had been made on the note. The complaint filed by appellant is in the usual form employed in actions of the character here instituted. Respondent's answer pleaded entire lack of consideration and that the note was executed solely for the accommodation of the bank

at the request of its president, I. I. Irwin. The trial court found that there was no consideration for the execution of the note; that it was given with the intention of accommodating the bank and was not given for the purpose of deceiving bank examiners or to work a fraud on the public; that the execution of the note was procured through fraudulent misrepresentation of I. I. Irwin, president of the bank. From the aforesaid findings the court drew the conclusion that appellant was not entitled to recover from respondent and rendered judgment accordingly.

A brief statement of the facts developed by the evidence may assist in clarifying the problem presented by the appeal herein. On February 29, 1928, I. I. Irwin, president of the California Savings and Commercial Bank of San Diego, proposed to respondent, a stockholder in said bank, that the latter should go through with the formality of purchasing the safety deposit department of the bank. The reason advanced by Irwin for the proposal thus made was that the bank was keeping open its safety deposit department throughout the twenty-four hours of each day and that the San Diego Clearing House Association refused to clear the bank's checks because the bank's action in keeping open its safety deposit department for the full twenty-four hours in each day constituted a violation of a rule of the Clearing House Association which forbade such action. Respondent demurred to the proposal thus made on the ground that he did not have the money with which to make the purchase and had no desire to acquire the safety deposit department of the bank. Respondent was then assured by Irwin that no money was required for the consummation of the scheme; that the money ostensibly necessary would be advanced to respondent by the bank; that respondent would execute his note for the amount representing the purchase price of the safety deposit department and would return to the bank the money advanced to him; that there would be no obligation upon him to pay the note, as the money would always be held available at the bank to offset his note. Upon the aforesaid representations, respondent accepted the proposal. He executed a note for $25,000 payable to the bank. His account with the bank was credited with the sum of $25,000 on the same day and on this date he drew his check for

$25,000 payable to I. I. Irwin. This check bears the following indorsement:

"Pay to the order of Calif. Savings & Commercial Bank of San Diego.

"I. I. IRWIN."

The original note thus executed by respondent was renewed by him on its due date and there were successive renewals, the last note given being the one on which the present action was instituted. Payments of interest due on the notes thus given were made by respondent, but his account was consistently credited with sums equivalent to the amounts paid by him as interest on the notes. From the aforesaid facts it sufficiently appears that the hereinabove mentioned findings of the court were fully justified with the single exception of the finding that "the note was secured by fraudulent misrepresentation of I. I. Irwin, President of the California Savings and Commercial Bank". The testimony of respondent himself shows that he fully understood the nature of the transaction and that it was purely fictitious, its object being the evasion of the rule of the San Diego Clearing House Association forbidding safety deposit departments of banks being kept open twenty-four hours in the day.

The problem presented for determination is, therefore, whether upon the facts as above narrated, the court was justified in concluding that no liability attached to respondent on the note for $25,000 executed by him and in rendering judgment accordingly. It is appellant's contention that respondent is estopped from raising the defense of lack of consideration against appellant, representing the creditors of the insolvent bank. With this contention we find ourselves impelled to agree. We are of the opinion that the instant case is not distinguishable in principle from the decision in *Wood* v. *Kennedy*, 117 Cal. App. 53 [3 Pac. (2d) 366], decided by this court, in which a hearing was denied by the Supreme Court. While it is true that there is not here present the element of lending credit to the bank for the purpose of ostensibly increasing the bank's assets with the intention of deceiving a bank examiner, an element often found in cases of this character, nevertheless, when respondent executed the note and made successive renewals

thereof, he must have known that one certain effect produced thereby would be to increase its assets fictitiously. Since the rights of creditors of the insolvent bank have now intervened and these innocent third parties will suffer injury if respondent is permitted to set up the true state of facts, a proper case for the application of the doctrine of estoppel is presented (*First Nat. Bank* v. *Reed,* 198 Cal. 252, 261 [244 Pac. 368]).

■ The fundamental reason for the application of the equitable doctrine of estoppel to a situation such as is here presented is because the accommodation maker joins in the perpetration of a scheme which is essentially deceitful. He may do so unwittingly. Nevertheless, the certain effect produced by his action in making the note without consideration and delivering it to the bank is that the bank's assets are ostensibly increased. This ostensible increase is, from the viewpoint of the accommodation maker, purely fictitious. The bank's creditors, however, are ignorant of the true situation. To them the accommodation note represents a real, not a fictitious, asset. They are justified in relying upon the note as being that which on its face it appears to be, a contract by the maker to pay a certain sum of money on a definite date. That the result of sustaining the defense of lack of consideration in a case of the character here presented would be seriously to jeopardize the rights of innocent creditors is apparent. For the sake of illustration, let us suppose the existence of the following facts: A bank on the brink of failure, for the purpose of delaying closing its doors, secures accommodation notes purporting to represent promises to pay large sums of money. Depositors, relying upon these fictitious evidences of indebtedness, continue to make deposits. When the true condition of the bank can no longer be concealed and insolvency occurs, shall the makers of accommodation notes escape liability to the bank's depositors on the ground that they had lent their credit to the bank without receiving any consideration therefor? We apprehend not. The depositors are entitled to say: "You lent your credit to the bank, we relied upon your notes as being what they purported to be, true promises to pay; in reliance thereon we continued to make deposits;

you may not now be heard to say that your notes were given without consideration and are therefore unenforceable.''

One further point remains to be considered. Appellant's complaint contained counts seeking recovery from respondent on two other notes executed by him. There was no denial of liability on these latter notes by respondent, but it was contended that there was no necessity of bringing suit upon them and that therefore appellant was not entitled to recover costs and attorney's fees upon such notes. The court found that respondent had on deposit with the bank collateral security for the payment of these notes and offered to pay such notes if appellant would deliver to him the aforesaid collateral security, which appellant refused to do; that appellant had no right to withhold the collateral security; that there was no necessity of bringing suit upon the notes. The evidence with reference to this feature of the case shows that, as collateral security for the payment of these latter notes, there was deposited with the bank a trust deed, the property of respondent, on which there was due to respondent approximately $10,000 and that, after appellant took possession of the assets of the bank, respondent requested that the trust deed be delivered to him and that he be permitted to collect the money due thereon and pay off the notes; that appellant declined to deliver the trust deed as requested; that there was no actual tender of money by respondent. Since the only evidence bearing on the feature of tender is that no actual tender of money by respondent was made, it remains to consider whether respondent's action in requesting delivery of the trust deed and for permission to collect the money due thereon and from the proceeds pay off the notes amounted to a tender of payment which, while it would not discharge the debt which the notes represented, might relieve him from liability for attorney's fees. Section 3151 of the Civil Code provides that if an instrument is, by its terms, payable at a special place, and the person primarily liable thereon is able and willing to pay it there at maturity, such ability and willingness are equivalent to a tender of payment. But respondent's ability to pay the amounts due on the notes was not made to appear and his willingness to pay was qualified by the imposition of a condition which appellant was

under no duty to perform. An expression of willingness to pay thus qualified is not equivalent to tender of payment (*Rottman* v. *Hevener,* 54 Cal. App. 485 [202 Pac. 334]). We are therefore of the opinion that the court's finding that there was no necessity for bringing action upon the notes is not supported by the evidence and that the court's conclusion that appellant is not entitled to recover attorney's fees is incorrect.

For the reasons stated the judgment is reversed.

Barnard, P. J., and Marks, J., concurred.