[L. A. No. 17953.   In Bank.   Feb. 25, 1942.]

SPENCER KENNELLY, LTD. (a Corporation), Plaintiff
  and Appellant, v. BANK OF AMERICA NATIONAL
  TRUST & SAVINGS ASSOCIATION (a National Bank-
  ing Association), Respondent; GLENN GOSS, Cross-
  Defendant and Appellant.

A. J. Getz and J. R. Myers for Appellants.

Edmund Nelson, G. L. Berrey and Louis Ferrari for Respondent.

HOUSER, J.—The plaintiff corporation brought an action in claim and delivery in the municipal court against the defendant Bank of America Trust & Savings Association to secure possession of a certificate of ownership of an Oldsmobile coupé, the plaintiff dealer having accepted the coupé from one Glenn Goss as part payment of the purchase price of a new automobile. The bank was the holder of a conditional sales contract for purchase of the Oldsmobile coupé wherein Goss was the vendee, and the certificate of ownership thereof was

held by the bank as security for the performance of the contract.

The controversy here involved arose in the following manner: In the latter part of April, 1940, Goss effected the purchase of the new automobile from the plaintiff company, intending to exchange in part payment therefor the Oldsmobile coupé, on which there was a balance still owing. The final payment under the conditional sales contract amounted to the sum of $376.12 and was due on May 7, 1940. At the time of such negotiations between Goss and the plaintiff automobile dealer, Goss arranged to give the latter a written authorization to pay to the bank the balance due under his contract, in order that the plaintiff might obtain possession of the certificate of ownership of the coupé. Pursuant thereto, an employee of the plaintiff company telephoned the bank concerning the balance necessary to be paid in order to receive the ownership certificate, and was informed by one of its clerks that the amount due was $376.12. The court found that on being so advised the "plaintiff accordingly agreed with said Glenn Goss to purchase said automobile for $760.00, allowing . . . [him] a net credit on a new automobile . . . of $760.00 less $376.12, or a total net credit of $383.88"; that thereafter, on May 1st, the plaintiff tendered to the bank Goss's authorization, together with a certified check in the sum of $376.12, which the defendant bank refused to accept upon the ground that the amount secured by the title to the automobile was the sum of $376.12 plus an unpaid balance on a promissory note (which had been executed by Goss to cover an expenditure for repairs to the automobile and which had been subsequently assigned to the bank), or a total of $421.97, which the bank thereupon demanded as a condition to releasing the ownership certificate.

The plaintiff company refused to pay the sum demanded by the bank and, treating the refusal of its tender of $376.12 as a waiver of the bank's lien on the automobile (*Walker* v. *Houston,* 215 Cal. 742 [12 Pac. (2d) 952, 87 A. L. R. 937]; *Moskovitz* v. *LeFrancois,* 121 Cal. App. 310 [8 Pac. (2d) 1049]; *Sondel* v. *Arnold,* 2 Cal. (2d) 87 [39 Pac. (2d) 793]; *Wagner* v. *Shoemaker,* 29 Cal. App. (2d) 654 [85 Pac. (2d) 229]), brought the instant action in claim and delivery to secure possession of the ownership certificate. The defendant bank cross-complained, plaintiff and Goss being joined as cross-

defendants, seeking payment of the unpaid balance on the conditional sales contract, together with the balance due on the promissory note; a declaration of its rights, including a determination that the bank possessed a lien on the automobile; a decree quieting title, and damages for conversion of the automobile.

Having become a cause in equity the matter was transferred to the superior court where Goss's demurrer to the cross-complaint was overruled and trial was had by the court. Judgment was rendered directing the bank to deliver the ownership certificate to the plaintiff and awarding the plaintiff costs as against the defendant bank. Also, by the terms of the judgment Goss was directed to pay to the bank the said sum of $376.12 and costs of suit incurred subsequent to the filing of the cross-complaint. From that judgment the plaintiff and Goss have appealed.

The plaintiff's appeal is on the sole ground that the trial court erred in refusing to award compensatory damages in its favor. It was claimed that during the time the certificate was held by the bank the plaintiff was unable to sell the automobile due to lack of evidence of title, and that, as a consequence, the automobile was kept in storage until the ownership certificate could be secured. Evidence was adduced to show that during such period the automobile suffered a depreciation in value in the amount of $155—which evidence was not contradicted. The plaintiff contends that since the trial court found it was entitled to the possession of the certificate both prior to and after the bringing of the action, and where, as here, compensatory damages were proved, an award therefor should have been made as a matter of course. Such is the general rule. (Sec. 667, Code Civ. Proc.; *Drinkhouse* v. *Van Ness,* 202 Cal. 359, 374 [260 Pac. 869]; 5 Cal. Jur. 206.) Moreover, it has been held that in a claim and delivery action where plaintiff prevails and the personal property involved has diminished in value, depreciation is a proper element of damages. (5 Cal. Jur. 207; *Anglo-California Trust Co.* v. *Collins,* 192 Cal. 315, 317 [219 Pac. 982]; *Berry* v. *Bank of Bakersfield,* 177 Cal. 206 [170 Pac. 415]; *Morris* v. *Allen,* 17 Cal. App. 684 [121 Pac. 690].)

The question to be determined is whether there were facts or circumstances presented herein by the evidence which justified the trial court in disallowing damages.

The evidence showed that at the time of the conversation between the respective employees of the plaintiff dealer and the bank concerning the amount of money necessary to be paid to secure the ownership certificate, the bank was the holder also of the promissory note heretofore referred to, in an amount covering repair charges on the automobile. Goss had incurred such expense and had executed the note about a year after the bank had become the assignee of the contract for the purchase of the automobile. The conditional sales contract contained a provision that title to the automobile was to be reserved in the bank until the payments on the purchase price of the automobile and any charges for repairs were paid. The note was being paid by monthly installments which were not consolidated with the monthly payments made on the purchase price of the automobile, and the bank kept its account of the note transaction separate from that pertaining to the contract for purchase of the automobile. No payment was due on the note at the time the conversation was had between the plaintiff company and the bank respecting the amount the latter would require to release the certificate, and the evidence conclusively showed that the note was not even mentioned at that time. However, there was some conflict in the evidence as to what was said on the occasion of the telephone conversation just referred to. The plaintiff's employee testified that she telephoned to the bank and asked a clerk thereof for the amount of the "pay-off" on the Goss account; that "he very particularly said $376.12"; that she then asked, "The net payoff is $376.12, is that correct?"—to which the defendant's clerk replied, "Yes, and it is due May 7th"; that she then asked whether the bank would accept the plaintiff's certified check therefor and he replied "Yes, *in that amount*"; and that nothing whatever was said with regard to any repair bill or any other account Goss might have had with the bank. As heretofore stated, the evidence was in conflict as to what was said during that conversation. Nevertheless, in making its findings favorable to the plaintiff, the trial court concluded that the bank had in fact informed the plaintiff it would relinquish the ownership certificate on payment of the sum of $376.12,—and, by implication, that in so doing the bank had thereby waived its security for the unpaid balance on the promissory note, and thereafter was estopped from demanding the payment of such additional sum as a condition to releasing the ownership certificate. Parenthetically, it may here be said

that Goss was not in default with respect to either of his transactions with the bank, and that he continued to and prior to trial did make payment of the entire balance owing on the note.

The defendant bank, in effect, now argues that under the facts and circumstances heretofore related, the trial court was in error in finding that the bank had lost its lien on the automobile by informing the plaintiff it would accept the sum of $376.12 as a condition to releasing the certificate. However, the bank has not appealed from the judgment rendered herein, and in view of the conflict in the evidence in a material particular, this court would not be inclined to disturb the findings in that respect in any event.

■ The record further shows that after the plaintiff company had instituted this action, and before the filing of the defendant's cross-complaint, the bank sent to the plaintiff a written demand, or statement, asserting it was the legal owner of the automobile, demanding possession thereof or the payment of the sum of $376.12, and advising that on receipt of such sum it would release the ownership certificate. That statement was introduced in evidence by the plaintiff, and the purpose it was intended to serve is not made clear. However, it has become the subject of considerable controversy between the parties to this appeal. The defendant asserts that the document constituted evidence which showed that the plaintiff could have mitigated the amount of damages which accrued during the period following its receipt by the plaintiff if the latter had immediately paid to the defendant the sum therein demanded. The plaintiff's reply thereto is that the defendant cannot set up, as a defense to an allowance of damages against it, a claim that the plaintiff was under a duty to accept the offer in order to mitigate damages, where the defendant has invoked the equity powers of the court and by that tribunal has been adjudged to be the wrongdoer. Moreover, the plaintiff asserts, the document here under discussion amounted to an unaccepted offer of compromise, within the import of section 997, Code of Civil Procedure, which was made after the commencement of suit and, as such, should not have been considered by the trial court in connection with the question of allowance of damages. The plaintiff points out that not only was such offer made by the defendant *after* the action had been instituted, but it contained no offer by the defendant

to pay the plaintiff's costs theretofore incurred. In that regard, in 5 California Jurisprudence, at page 406, it is said: "If a suit has been begun, the offer should be to allow judgment to be taken for the amount due at the time of the commencement of the action, *with costs incurred.*" (Emphasis added.) (*Rottman* v. *Hevener,* 54 Cal. App. 485, 490 [202 Pac. 334]; *McCoy* v. *Buckley,* 11 Cal. App. 241, 244 [104 Pac. 705]; *Fell* v. *Frierson,* 171 Cal. 351, 352 [153 Pac. 229].) It has been ruled that "The rights of the parties to an action are not affected by an attempt and failure to compromise the litigation, irrespective of the cause which produced the failure." (5 Cal. Jur. 408; see, also, *McCallion* v. *Hibernia S. & L. Soc.,* 70 Cal. 163 [12 Pac. 114].) Section 997, Code of Civil Procedure, provides that an unaccepted offer of compromise "cannot be given in evidence upon the trial." Under the foregoing authorities, it is our conclusion that, although the document was offered in evidence,—in the light of the circumstances surrounding the making of such offer,—it should not have been considered by the trial court as imposing a duty on the plaintiff to have accepted its terms as a means of avoiding the accrual of further damages. The trial court made a finding on such offer, and therefore we cannot say that in refusing to award damages to the plaintiff the court was not erroneously influenced by the document in question.

The record also shows that after most of the evidence had been adduced the trial court stated it would award damages to the plaintiff in the sum of $155. Thereafter, during the course of argument by counsel, the plaintiff's attorney made the statement that if such judgment should be awarded the plaintiff the latter would be willing to pay the sum of $376.12,—whereupon the trial judge said that in view of such statement no damages would be awarded to the plaintiff. However, we find nothing objectionable in that statement sufficient to warrant a refusal to award damages, in view of the fact that the trial court had previously indicated it would make such an award. Insofar as the statement purported to express a willingness on the plaintiff's part to pay the $376.12, there was evidence to show, and, as heretofore indicated, the trial court found that "plaintiff . . . [had] agreed with said Glenn Goss to purchase said automobile for $760.00, allowing to the said Goss a net credit on a new automobile then purchased by Goss from plaintiff of $760.00 less $376.12, or a total net credit of $383.88"; and therefore it would seem

immaterial whether Goss paid the sum of $376.12, or whether the plaintiff offered to make such payment. Moreover, the record shows that the plaintiff's attorney possessed no authority from his client to make any declaration of the nature of that here involved, and the rule is that an attorney may not impair his client's substantial rights by the making of an unauthorized oral declaration. (*Price* v. *McComish,* 22 Cal. App. (2d) 92, 97 [70 Pac. (2d) 978] ; 3 Cal. Jur. 667.) That the statement of plaintiff's counsel had such an effect on the trial judge who decided the issues here involved is evidenced by his response thereto. In view of the uncontradicted evidence showing the accrual of damages to the plaintiff by reason of the defendant's retention of the ownership certificate, neither the statement referred to nor the so-called offer of compromise previously discussed should have been allowed to operate to the plaintiff's detriment on the issue of an allowance of damages.

■ Appellant Goss claims the trial court erred in overruling his demurrer to the cross-complaint. He contends a cross-complaint may not be filed in an action for claim and delivery—asserting that such action is limited to the issue whether the plaintiff was entitled to possession of the specific personal property involved. He claims that proposition is particularly true in an instance such as the present one, where, as a third party, he was brought into the controversy for the first time by the cross-complaint. However, it has been held that under proper circumstances relief may be sought by the filing of a cross-complaint in a claim and delivery action. (See *Ackerman* v. *Schultz,* 178 Cal. 190 [172 Pac. 609] ; *Moskovitz* v. *LeFrancois,* 121 Cal. App. 310, 313 [8 Pac. (2d) 1049] ; 5 Cal. Jur. 193.) Also, it is the rule that new parties may be brought in under a cross-complaint where it is made apparent that their presence is essential to the complete determination of the controversy between parties already before the court. (Sec. 442, Code Civ. Proc.; 21 Cal. Jur. 82, *et seq.*)

■ And, contrary to Goss's further contention, we do not understand that where a cross-complaint which is otherwise not objectionable is filed in such an action, it is vulnerable to a demurrer if it contains a prayer for damages for conversion in addition to other relief sought. (See *Moskovitz* v. *LeFrancois, supra; Ackerman* v. *Schultz, supra.*)

Although appellant Goss has challenged the imposition of

the judgment against him in favor of the bank in the sum of $376.12, it does not appear he is claiming that as between himself and the plaintiff it was understood the latter was primarily liable for the payment of such sum. By the terms of the agreement which existed between them it evidently was the understanding that if Goss made such payment he was to be entitled to the gross credit heretofore referred to. We find no error, therefore, in the judgment which was rendered against him on the cross-complaint.

We deem it unnecessary to discuss other points argued in the briefs.

As heretofore has been indicated, in failing to make a finding and award in favor of the plaintiff upon the issue of damages, the trial court has acted contrary to the uncontradicted evidence adduced on that issue. It is settled, however, that in order to affirm a judgment an appellate court may make a necessary finding under such circumstances. (*Tupman* v. *Haberkern*, 208 Cal. 256 [280 Pac. 970].) Therefore, the findings hereby are modified by adding thereto the following, in lieu of the trial court's finding to the contrary: "It is found that by reason of the defendant's wrongful detention of the certificate the plaintiff has been damaged in the sum of one hundred and fifty-five dollars."

The judgment is therefore modified to show an allowance of damages to the plaintiff in the sum of $155. As so modified the judgment is affirmed.

Gibson, C. J., Shenk, J., Curtis, J., Edmonds, J., Carter, J., and Traynor, J., concurred.